UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                        ::
DEBRA S. CROWE and MICHAEL YOHANNES,                    :
                                                        :
                          Plaintiffs,                   :
                                                        :
           -against-                                    :
                                                        :
BROOKLYN HOSPITAL CENTER, PROPOCO, INC.,                :
d/b/a PROFESSIONAL SERVICES, and HARVEY                 :
FRUMKIN,                                                X
                          Defendants.

02 CV 5938 (ARR)

NOT FOR ELECTRONIC
OR PRINT
PUBLICATION

OPINION AND ORDER

---------------------------------------------------------------

ROSS, United States District Judge:

   Plaintiffs Debra Crowe and Michael Yohannes have brought suit against defendants

Brooklyn Hospital Center ("BHC"), Propoco, Inc. ("Propoco"), and Harvey Frumkin

("Frumkin"), alleging violations of Title VII of the Civil Rights Act of 1964, codified at 42

U.S.C. § 200e-5 et seq., and the New York State Human Rights Law ("NYSHRL") and the

New York City Human Rights Law ("NYCHRL").

   The Complaint originally asserted the following six causes of action: (1) on behalf of

Crowe, quid pro quo sexual harassment in violation of Title VII by BHC and Propoco; (2) on

behalf of both plaintiffs, retaliation in violation of Title VII by BHC and Propoco; (3) on behalf

of Yohannes, national origin discrimination in violation of Title VII by BHC and Propoco; (4)

on behalf of Yohannes, age discrimination in violation of the Age Discrimination in

Employment Act by BHC and Propoco; (5) on behalf of both plaintiffs, sex, age, and national

origin discrimination as well as retaliation, in violation of NYSHRL and NYCHRL by BHC

and Propoco, and that Frumkin aided and abetted these violations; and (6) on behalf of both plaintiffs, breach of contract by BHC and Propoco. By stipulation dated March 21, 2005, plaintiffs have agreed that the following claims against Propoco be dismissed with prejudice: quid pro quo sexual harassment; national origin discrimination; age discrimination; and all state law claims, including for breach of contract, except for retaliation. The stipulation further dismissed the causes of action against BHC and Frumkin under both state and federal law for age and national origin discrimination, as well as for breach of contract. The stipulation expressly did not dismiss plaintiffs' claims against BHC for sexual harassment and retaliation under state law or the claim that Frumkin aided and abetted those violations. In her response brief, Crowe has voluntarily dismissed, with prejudice, her claim of sexual harassment in violation of Title VII against BHC. Plaintiffs' Memorandum of Law in Opposition to Summary Judgment Motions of BHC and Frumkin at 2n.1.

The following claims remain active: (1) on behalf of both plaintiffs, retaliation in violation of Title VII by BHC and Propoco; (2) on behalf of both plaintiffs, retaliation in violation of NYSHRL and NYCHRL by BHC and Propoco, including the claim that Frumkin aided and abetted that retaliation; and (3) on behalf of Crowe, sex discrimination in violation of NYSHRL and NYCHRL by BHC, including the claim that Frumkin aided and abetted that violation. Thus, the only remaining federal law claim court is plaintiffs' claim against BHC and Propoco for retaliation in violation of Title VII.

Presently before the court are defendants' motions for summary judgment. Defendant Propoco seeks summary judgment on the remaining claims against it, those alleging retaliation in violation of federal and state law. Defendants BHC and Frumkin, misconstruing the

2

stipulation of dismissal, assert that only two causes of action implicate them: (1) the first cause of action for quid pro quo sexual harassment in violation of Title VII; and (2) the second cause of action for retaliation in violation of Title VII. Plaintiffs have subsequently voluntarily dismissed the former claim, although they continue to assert claims against defendants BHC and Frumkin for retaliation under state law and sexual harassment under state law on the theory that defendants created a hostile work environment. Protesting that plaintiffs raised this claim for the first time in their response brief, defendants BHC and Frumkin also seek summary judgment on this claim.[1]

## BACKGROUND

The following facts are undisputed unless otherwise indicated. Defendant Propoco provides facility management services, specifically managers, to nursing homes and hospitals, including BHC. Defendant BHC is a healthcare facility located on DeKalb Avenue in Brooklyn. Defendant Harvey Frumkin was at all relevant times BHC's Director of Labor Relations. Plaintiffs Crowe and Yohannes were Propoco employees working as managers at BHC.

On September 24, 1998, BHC and Propoco entered into a service agreement whereby Propoco agreed to provide facility management services to BHC, including seventeen management employees. Defendant BHC's Ex. D. According to the agreement, the initial term

---

[1]Plaintiffs' fifth cause of action alleged, inter alia, sex discrimination in violation of city and state law. While plaintiff's complaint did not refer specifically to hostile work environment harassment, it described the harassment in enough detail to put the claim before the court. In any event, as defendants have addressed plaintiffs' hostile work environment claim on the merits, the court finds that they have failed to demonstrate any prejudice that would result from the court's consideration of plaintiff's claim. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 568 (2d Cir. 2000) (concluding, even despite the fact that plaintiff's "imprecise" complaint did not refer specifically to hostile work environment sexual harassment, that the essential elements of the charge appeared in the complaint and that the district court had properly considered the claim).

was for three years, with discussions regarding extension to occur no less than ninety days and no more than 120 days prior to the termination of the agreement period. The parties signed Amendment No. 1 on April 6, 2001, thereby extending the agreement two years, among other things. Plaintiffs' Ex. 1. In accordance with the agreement, Propoco placed management level employees at BHC to supervise laborers in the Building Services Department.

Prior to working for Propoco, plaintiffs Crowe and Yohannes had worked together at the Medical College of Virginia, where Yohannes served as Crowe's supervisor. Crowe was offered a position with Propoco in May or June of 2000. Her initial assignment was at BHC. Upon arriving there, she received a copy of the Manager's Handbook and underwent orientation, which included discussion of BHC's sexual harassment policy. Crowe served initially as the Help Desk Manager at BHC, overseeing the transportation department and mail room. She reported to Yohannes, a Propoco employee who served as BHC's Director of Environmental Services. Crowe also reported to Susan Raffellini, a BHC employee who was Director of General Services. Propoco later promoted Crowe to Assistant Director of building or environmental services at BHC following an interview with Ken Vlass, Propoco's Regional Manager. After this promotion, she reported to Vlass, in addition to Yohannes and Raffellini, and would interact with BHC's Rick Tenreiro and Frank Maddalena when Yohannes was not in the office. Crowe Deposition at 120. As of March or April of 2000, Yohannes had "assigned" Crowe to be a liaison between the building services department and Frumkin, BHC's Director of Labor Relations. Yohannes Deposition at 304-05.

Yohannes began working for Propoco as a Director of Environmental/ Building Services in June 2000 following an interview with Vlass and Rich Myerson, Propoco's Vice President of Human Resources. As Director, Yohannes reported to Vlass.

On January 5, 2001, BHC sent Propoco a letter outlining its dissatisfaction with the quality of Propoco's services and threatening to "seek out other options with regard to management of our Environmental Services department" unless there was "significant improvement." Defendant BHC's Ex. G. During July and August of 2001, there were ongoing negotiations between Propoco and BHC as to whether BHC would terminate the contract. Propoco's employees were informed of those negotiations.

By letter dated September 19, 2001 to Propoco's Stephen Barnett, BHC Vice President Rick Tenreiro confirmed that the services provided by Propoco under the Housekeeping Agreement would be transferred to the hospital and expressed the intention that the transfer would be completed by December 31, 2001. Defendant BHC's Ex. I. The letter further indicated that, effective immediately, BHC would "assume responsibility for the Director of Environmental Services and the Assistant Director." Id. The agreement was memorialized in Amendment No. 2 to the contract, dated September 23, 2001. Plaintiffs' Ex. 2. The Amendment provided that the September 28, 1998 agreement between BHC and Propoco would terminate as of December 31, 2001 and that, in the interim, the services provided by Propoco would consist only of providing interim staffing support. Id.

While Crowe was still working for Propoco at BHC, a transition team arrived at BHC. Dave Hanos, whom Yohannes had seen at BHC in late September or early October, ultimately replaced Yohannes. Yohannes Deposition at 158-59. Yohannes learned at some point in

5

October that a replacement would transition into Crowe's position. Id. at 256-57. When, at a later point, he learned the person's identity, he recalled having seen the person at BHC since mid to late September. Id. at 258. While Crowe had seen the transition team, composed of Hanos, her replacement Obe Caldas, and another manager prior to September 21, 2001, there is no indication when Crowe learned who these people were. Crowe Deposition 2 at 143-44. Hanos and Caldas were given offices after spending a number of weeks working out of the cafeteria. Yohannes Deposition at 470. Prior to September 21, 2001, Crowe and Yohannes discussed that neither of them had been involved in training the transition team members. Crowe Deposition 2 at 150-51. Yohannes eventually did conduct orientation sessions, primarily for Hanos, beginning in early October and continuing until the third week of that month. Yohannes Deposition at 471-73.

Crowe alleges that she was sexually harassed by Frumkin, in her office, on September 21, 2001. Plaintiffs' Ex. 11. Crowe alleges that Frumkin harassed her verbally before he "kissed and sucked" her neck. Crowe Deposition 1 at 194-95. After the incident, Crowe never saw Frumkin again at the hospital. When she returned home from work that evening, Crowe spoke with Yohannes and told him what had happened. Crowe did not return to work at the hospital until that Thursday, September 27. Yohannes did not speak to anyone else about the incident until he told BHC's Susan Raffellini that week that Crowe would be reporting an incident involving Frumkin. Yohannes Deposition at 317-18.

On September 28, 2001, Yohannes accompanied Crowe to a meeting with Raffellini. On that day, Crowe described the incident to Raffellini, Christine Edwards, who was BHC's Vice President of Human Resources, and Venra Mathurin, also a BHC employee. After having

6

spoken with Crowe, Raffellini told Yohannes that she would report the incident to BHC's Frank Maddalena. Raffellini thereafter spoke with Tenreiro and Maddalena. Crowe prepared a report detailing the incident dated September 28, 2001, and Yohannes prepared a report dated October 1, 2001. Plaintiffs' Ex. 11, 12. Crowe never spoke with Raffellini, Edwards, or Mathurin after the September 28 meeting.

On the following Monday or Tuesday, October 1 or October 2, Crowe contends that either Propoco's Lance Connelly or Vlass told her that she should remain home while the investigation was pending. Crowe Deposition 1 at 283; Crowe Deposition 2 at 199-205. Later in October, on or about October 12, 2001, Crowe returned to BHC for a meeting with Vlass, at which point he informed Crowe that she would be terminated from BHC and Propoco and discussed a potential employment opportunity with Propoco at another institution. Crowe contends that Vlass told her BHC's Frank Maddalena did not want her on the hospital premises because she had complained of sexual harassment. Crowe Deposition 1 at 158-59, 165. Crowe's termination was effective October 19, 2001. Yohannes contends that Propoco's Myerson told him that BHC wanted Crowe fired and that, if she was to be fired, he had to be fired as well. Yohannes Deposition at 344-45. His termination was also effective October 19, 2001.

Crowe and Yohannes claim that they were to retain their positions with Propoco at BHC until December 31, 2001. While Crowe testified that she understood that the transition period was to end by December 31, 2001, Crowe Deposition 1 at 174, Yohannes testified that he understood that he was to continue working at BHC until January or February 2002 to help the new management team through a tri-annual inspection. Yohannes Deposition 555-56.

7

During her deposition testimony, Crowe indicated both that Propoco had told her at the time she was terminated that it could not place her immediately, Crowe Deposition 1 at 276-77, and that Propoco's Vlass had mentioned an interview for another job for the following Monday, approximately three days later. Id. at 157-58. While Crowe expected that Vlass would call her the Monday following her termination about an employment opportunity, she contends that Vlass never called. Id. at 180-81. Propoco's Myerson did call about an interview approximately a week after her termination. Id. Crowe did not return his call. Id. at 181. Propoco sent several letters to Crowe describing employment opportunities, but they were initially sent to the wrong address. Id. at 161.

Yohannes tendered his resignation from Propoco on July 26, 2001, which was to take effect on October 6, but he sent a fax withdrawing his resignation to Propoco's Myerson during the first week of October. Defendant Propoco's Ex. N. Yohannes testified that Myerson had told him in a telephone conversation in early October 2001 that his employment was going to be terminated because the contract with BHC would not be renewed and there was no position with the company at the same salary. Yohannes Deposition at 154, 290-91. Yohannes further testified that shortly before October 19, 2001, on or about October 17, 2001, Myerson told him that he would be laid off on October 19 with Crowe. Id. at 343-45. According to Yohannes, both Propoco's Myerson and BHC's Tenreiro indicated that BHC wanted Crowe off the premises. Id. at 344. Yohannes further testified that Myerson indicated that if Crowe had to go, he did also. Id. at 345.

## DISCUSSION

I.    Summary Judgment Standard

8

Under Rule 56, summary judgment is proper if the pleadings, depositions, answers, interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc.56(c). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome of the litigation if application of the relevant substantive law requires their determination. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Cartrett, 477 U.S. 317, 323 (1986). The substantive law determines the facts that are material to the outcome of a particular litigation. See Anderson, 477 U.S. at 250; Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

If the moving party meets its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e). The non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. Only when it is apparent that no rational finder of fact

9

"could find in favor of the non-moving party because the evidence to support its case is so slight"

should summary judgment be granted. Gallo v. Prudential Residential Servs. Ltd. Partnership,

22 F.2d 1219, 1223 (2d Cir. 1994).

The Second Circuit has cautioned that the standard for summary judgment in employment

discrimination cases must be applied with "added rigor" and "sparingly," because in such cases

intent and credibility are often at issue. See, e.g., Feingold v. State of New York, 366 F.3d 138,

149 (2d Cir. 2004); Mandell v. County of Suffolk, 316 F.3d at 377; Chertkova v. Connecticut

General Life Ins. Co., 92 F.3d at 86. Since there is often a question of fact as to whether the

reason proffered by an employer for action taken against an employee is credible or merely a

pretext for discrimination, summary judgment is often inappropriate in employment

discrimination cases. Chertkova, 92 F.3d at 97; Quarantino v. Tiffany & Co., 71 F.3d 58 (2d Cir.

1995).

II.     Retaliation Claim

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to

discriminate against any of his employees . . . because [such employee] has opposed any practice

made an unlawful practice by this subchapter . . . ."[2]  42 U.S.C. § 2000e-3(a); cf. Sarno v.

Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999) ("[A] plaintiff need not

establish that the conduct she opposed was actually a violation of the statute so long as she can

establish that she possessed a good faith, reasonable belief that the underlying challenged actions

of the employer violated that law.") (internal quotation marks and alteration omitted).

---

[2]Claims made pursuant to the New York State Human Rights Law and the New York
City Human Rights Law are subject to the same analysis as claims pursuant to Title VII. Cruz v.
Coach Stores, Inc., 202 F.3d 560, 565 n. 1 (2d Cir.2000).

Retaliation claims under Title VII are tested under the familiar three-step burden-shifting analysis. First, the plaintiffs must make out a prima facie case of retaliation. Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998). Second, the defendant then has the burden of articulating a legitimate, non-retaliatory reason for the challenged action. Id.; Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000) (describing defendant's burden as a burden of production, not persuasion). Third, if the defendant meets its burden of production, plaintiffs must adduce evidence sufficient to raise an issue of fact as to whether the employer's reason was merely a pretext for retaliation. Quinn, 159 F.3d at 769.

To establish a prima facie case of retaliation, an employee must show: (1) participation in a protected activity; (2) that the employer was aware of plaintiff's participation in the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000). "The plaintiff's burden at the beginning of the case is a light one, usually demanding only that the protected activity preceded the adverse action in order to satisfy the causation requirement." Raniola v. Bratton, 243 F.3d 610, 624 (2d Cir. 2001); Clark County School District v. Breeden, 532 U.S. 268, 273 (2001) (per curiam) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'") (citations omitted).

Once the burden has shifted back to the plaintiff to establish that the employer's action was, in fact, motivated by discriminatory retaliation, a plaintiff may establish a Title VII violation even when a retaliatory motive is not the sole cause of the adverse employment action or when

11

there were other objectively valid grounds for a discharge. Raniola, 243 F.3d at 625. "A

retaliatory motive must be, however, at least a substantial or motivating factor behind the adverse

action." Id. (internal quotation marks and citations omitted). A plaintiff may prove that

retaliation was a "substantial" or "motivating" factor behind an adverse employment action

either: (1) indirectly, by showing that the protected activity was followed closely by

discriminatory treatment, or through other circumstantial evidence such as disparate treatment of

fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory

animus directed against the plaintiff by defendant. Id.

The court notes that, at the third step of the analysis, "[a]n employer's decision to

discharge an employee in connection with the closure of the employee's job site typically does

not give rise to a retaliation claim" and that "[t]his is particularly true when the plaintiff is not

treated differently from other employees or has failed to request a transfer prior to the site's

closure." Coffey v. Dobbs International Services, Inc., 170 F.3d 323, 327 (2d Cir. 1999)

(citations omitted).

A.     Propoco

In the instant case, plaintiffs claim that Propoco fired them in retaliation for complaining

to BHC administrators that Frumkin sexually harassed Crowe. Plaintiffs have thus shown that

they were engaged in a protected activity known to the defendant and that there was an adverse

employment action. Propoco concedes these points but contends that plaintiffs are unable to

establish a causal connection between the protected activity and the adverse employment action

that is necessary to make out a prima facie case of retaliation. The court does not agree.

12

A plaintiff may establish the existence of a causal relationship directly, through evidence of retaliatory animus, or indirectly, such as by showing that the protected activity was followed closely by discriminatory treatment. Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000). In the instant case, Crowe testified that Ken Vlass told her, on or about October 12, that she was being dismissed from her position at BHC because she had complained of sexual harassment and that BHC did not want her on the premises. Crowe Deposition 1 at 273. Crowe testified that she was also terminated from Propoco during this meeting, but that Vlass explained that he wanted her to interview for another position the following week. Id. at 158. Yohannes testified that, on or about October 17, Rich Myerson of Propoco informed him that BHC did not want Crowe on the premises. Yohannes Deposition at 344. He further testified that, when asked whether BHC's position was in response to the "incident that happened," Myerson did not respond. Id. at 345. Finally, Yohannes testified that Myerson told him that if Crowe was to be "let go," Yohannes also had to be "let go." Id.

The court need not determine whether the plaintiffs' testimony constitutes direct evidence of retaliatory animus on the part of Propoco at this stage of the analysis because plaintiffs have made a sufficient indirect showing that the protected activity was followed closely by discriminatory treatment. Crowe complained of Frumkin's harassment, at Yohannes' urging, on September 28. Both plaintiffs were notified in early to mid-October that they would be dismissed effective October 19. The events are sufficiently close in time to satisfy the causality requirement. Breeden, 532 U.S. at 273 ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity

13

must be very close.") (citations and internal quotation marks omitted); Dibrino v. Dep't of Veteran's Affairs, No. 04-860. 118 Fed.Appx. 533, 535, 2004 WL 2861673, *2 (2d Cir. Dec. 14, 2004) (noting that the court has not drawn a "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," but noting that the two events must be "very close" in time) (internal quotation marks and citations omitted). The court thus finds that plaintiffs have made out a prima facie case of retaliation.

The plaintiffs having adduced evidence establishing a prima facie case of retaliation, the burden shifts to Propoco to point to evidence supporting a legitimate, non-retaliatory reason for Crowe and Yohannes' terminations. Propoco contends that it discharged plaintiffs because BHC decided to terminate its contract with Propoco and fill plaintiffs' positions internally. Upon completion of the transition period at BHC, plaintiffs were no longer required at the hospital. Propoco further contends that it did not have any immediately available, comparable positions where it could place either plaintiff. As a result, it terminated Crowe and Yohannes. This explanation is supported by much evidence in the record. Amendment No. 2 to the contract between Propoco and BHC memorialized that the agreement between the two companies would terminate as of December 31, 2003 and that, in the intervening period, the services rendered by Propoco would "be limited to providing interim staffing." Defendant BHC's Ex. J. While this amendment indicates that Propoco would continue to provide the seventeen employees previously covered by contract, unless BHC requested Propoco to reduce the number of employees, it is at least relevant that BHC's Vice President, Rick Tenreiro, indicated by letter dated September 19, 2001 that "effective the date of this letter, the Hospital will assume responsibility for the Director of Environmental Services and the Assistant Director," Yohannes

and Crowe's respective positions. Defendant BHC's Ex. I. Moreover, both plaintiffs testified that they had seen at BHC the employees who ultimately replaced them as early as mid to late-September. Yohannes Deposition at 158-59; Crowe Deposition 2 at 143-44. Finally, Ken Vlass testified that Crowe was "laid off" once BHC had transferred her position in-house because there were no positions immediately available with Propoco. Vlass Deposition at 68. This evidence satisfies Propoco's burden of articulating a legitimate, non-retaliatory reason for terminating Crowe and Yohannes.

Accordingly, the court must determine whether the record contains evidence to support Crowe and Yohannes' contention that Propoco's proffered reason was merely pretext for retaliation–evidence sufficient to require a trial before a trier of fact. The court must, of course, view the record in the light most favorable to the plaintiffs and draw all reasonable inferences in their favor. The thrust of plaintiffs' claim is that Propoco retaliated against them for having complained of Frumkin's alleged harassment by terminating them after BHC discharged them from their positions at the hospital. This case bears the hallmark of a job site closing, and the court reiterates the Second Circuit's indication in Coffey that "[a]n employer's decision to discharge an employee in connection with the closure of the employee's job site typically does not give rise to a retaliation claim," particularly "when the plaintiff is not treated differently from other employees." 170 F.3d at 327.

          1.     Crowe

Plaintiff Crowe first contends that Propoco had a "longstanding policy" of maintaining employees "on the bench" between assignments, i.e., retaining managers during gaps between assignments. Crowe further argues that financial considerations did not compel Propoco to

terminate her rather than to pay her one week's wages between assignments, that Propoco could have let her take accumulated vacation time between assignments rather than terminating her, or that Propoco could have given her an unpaid leave of absence during the gap between assignments. Crowe's latter contentions effectively ask the court to second-guess Propoco's business judgment, a task the court is not permitted to undertake. Rather, the court must consider whether plaintiff has adduced evidence indicating that Propoco's proffered explanation is pretextual. In undertaking this analysis, the court may consider whether Propoco, in connection with the loss of its contract with BHC, treated Crowe differently from other employees. The court reiterates that, at this step of the analysis, Crowe must adduce evidence sufficient to raise an issue of fact as to whether Propoco's reason for terminating her was merely a pretext for retaliation. Quinn, 159 F.3d at 769.

Plaintiff cannot meet this burden by merely hypothesizing what Propoco could have done to retain her under the circumstances. Rather, Crowe must adduce evidence from which a reasonable trier of fact could conclude that Propoco's reason for terminating her was merely pretextual. Claims that Propoco could have allowed Crowe to take vacation time or given her unpaid leave do not constitute such evidence. If, to the contrary, Crowe adduced evidence that Propoco had a practice of maintaining managers "on the bench" during gaps between assignments but did not so retain Crowe, plaintiff may well have adduced evidence that she was treated differently from other employees, raising a genuine issue of material fact. Viewing the evidence in the light most favorable to Crowe and drawing all reasonable inferences in her favor, however, Crowe has not made such a showing. Propoco's Rich Myerson testified that, as of late summer or early fall 2001, the company had decided that "if managers became without a home, if

their position was eliminated or, in this particular case, we lost an account and, you know, people were coming out of their positions, if we did not have a similar position at similar pay, then we were not in a financial position to continue that person . . . that person's employment unless they had a slot to go into." Myerson Deposition at 50-51. Crowe has not adduced evidence to dispute Myerson's testimony. In fact, Crowe testified that, to her knowledge, no Propoco employee whose employment ended as a result of the termination of the contract with BHC was placed "on the bench." Crowe Deposition 2 at 21-22. Similarly, while the record reveals that a number of Propoco employees lost their positions at BHC in advance of the December 31, 2001 contract termination date, Crowe has adduced no evidence to suggest that Propoco retained any other employee who lost her position at BHC without work pending an assignment in another institution.[3]

Crowe also claims that, at the time she was terminated, Propoco had a position available as Director of Brenner Nursing home. The record indicates that a position was also open at Green Park Nursing Care Center at that time. While Crowe was Propoco's preferred candidate for both positions, Myerson Deposition at 74, Ruben Gonzalez was awarded the Brenner job, being transferred to that position on Saturday, October 27, 2001. Plaintiffs' Ex. 3. According to

---

[3]Propoco has submitted a spreadsheet reflecting the weekly contract price owed to Propoco by BHC, disaggregated by employee positions. Defendant Propoco's Supplementary Ex. A. The spreadsheet reflects credits to the contract price due BHC for management employees not actually provided by Propoco, an arrangement explained by Propoco's Stephen Barnett. Barnett Deposition at 7-14. This spreadsheet reveals a substantial volume of credits due BHC in the weeks preceding December 31, 2001, indicating that BHC had brought a number of positions formerly filled by Propoco employees in house in advance of the year's end. This spreadsheet further indicates that, at the time plaintiffs were terminated, approximately half of Propoco's seventeen employees placed at BHC, including plaintiffs, had been relieved from duty at BHC.

17

the deposition testimony of Ken Vlass, Gonzalez was arguably less qualified for the position than Crowe. Vlass Deposition at 60-62.

Crowe testified that, at the time she was terminated, Ken Vlass wanted her to interview for the Brenner position the following Monday. Crowe Deposition 1 at 157-58. While the record does not make clear when this conversation took place, it appears to have occurred on or about October 12, 2001. Crowe testified further that while Vlass never called her, she received a call from Myerson approximately one week later regarding an interview at Brenner. Id. at 179-80. That testimony is confirmed by Myerson's handwritten notation that he left messages for Crowe on October 24, 26, and 31. Plaintiffs' Ex. 4. Propoco was also apparently sending Crowe letters about potential assignments during this period, although it had transposed the numbers in her street address. Myerson notified Crowe at the correct address by letter dated December 10, 2001, that it had "just come to [his] attention that [they] had been sending [her] mail to the wrong address." Plaintiffs' Ex. 16; Crowe Deposition 1 at 160-61. Crowe did not return Myerson's calls. Crowe Deposition 1 at 181. She has acknowledged that Propoco offered her positions, or at least interview offers, after she was terminated but stated that she "just did not respond" to those offers, indicating that, as of the date of her termination, she was no longer interested in continuing employment with Propoco. Id. at 188-90.

While Crowe attempts to argue in her brief that, after being terminated, Propoco placed at Brenner an arguably less qualified employee, who had also been terminated from a position at BHC, she has not raised an issue of fact as to whether Propoco's reason for terminating her was merely a pretext for retaliation. The record indicates that Propoco made efforts to arrange an interview for Crowe at Brenner, but Crowe testified that she was not interested in working for

18

Propoco following her termination and did not respond to those offers. This evidence does not raise a fact issue as to whether Crowe was treated differently from any other Propoco employee who lost her position at BHC.

Plaintiff Crowe has adduced no evidence from which a reasonable juror could infer that Propoco's proffered reasons for terminating her were merely pretextual and that she was, in fact, terminated in retaliation for her sexual harassment complaint.[4] As a result, the court must grant Propoco's motion for summary judgment on Crowe's retaliation claim.

### 2. Yohannes

Yohannes' brief presents no direct evidence of retaliatory animus or motive on Propoco's part. Plaintiff invokes a statement allegedly made by Myerson at the time Yohannes was terminated that BHC wanted Crowe off the hospital premises, implying that this was because of her sexual harassment complaint. While the court must assume for purposes of this motion that Myerson made the statement, the court cannot adopt plaintiff's construction of this statement as an admission of retaliatory intent by Propoco. As discussed in further detail below, the statement reflects only BHC's intent and is, in any event, inadmissible hearsay with respect to BHC.

The remainder of plaintiff's brief contends that Propoco was disingenuous in its efforts to find a position for Yohannes at another institution after terminating him. Plaintiff argues that "Propoco never terminated a good Assistant Director or Director due to lack of work before they

---

[4]The court notes that plaintiff has not even provided a motive to explain why Propoco would have retaliated against her for complaining that Frumkin had harassed her. BHC's termination of the contract with Propoco predated Crowe's complaint and had nothing whatsoever to do with that complaint. Moreover, Crowe has offered no reason to believe that Propoco's other contracts with BHC would have been endangered in any way by maintaining Crowe as a Propoco employee at another institution.

fired plaintiffs claiming this excuse," Plaintiff's Brief at 34, but points to no evidence from which a reasonable juror could conclude that Propoco's proffered reason is unworthy of credence. Assuming plaintiff's argument to be true as an historical matter, without evidence that Yohannes was treated differently from other, similarly situated employees at the time he was terminated, plaintiff has cited no direct or indirect evidence from which a juror could reasonably infer that Propoco's proffered reason for terminating him was merely pretextual. Plaintiff has adduced no issue of fact requiring a trial. As a result, the court must grant defendant Propoco's motion for summary judgment on plaintiff Yohannes' claim against Propoco for retaliation under federal and state law.

B.     BHC

The court notes preliminarily that, in order to hold BHC liable for retaliation in violation of Title VII, the court must first determine that BHC was plaintiffs' employer within the meaning of the statute. The court need not determine this issue. however. because plaintiffs, at the third step of the burden-shifting analysis, have not raised a genuine issue of material fact requiring trial. Thus, for purposes of the following analysis, the court assumes that BHC was plaintiffs' employer within the meaning of Title VII.

For the reasons stated above, plaintiffs have made out a prima facie case of retaliation. Defendant BHC has also satisfied its burden of production, having identified evidence supporting a legitimate, non-retaliatory reason for plaintiffs' terminations.[5] As early as January 2001, BHC

---

[5]The court notes that, having identified the three-step burden-shifting analysis and denied that it was plaintiffs' employer within the meaning of Title VII, BHC argued that plaintiffs failed to establish a causal connection between the protected activity at issue in this case and the adverse employment action. BHC then proceeded to make factual arguments intended to undermine plaintiffs' retaliation claim, but it did not clearly or explicitly address, in an

expressed dissatisfaction with Propoco's performance under the contract. Defendant BHC's Ex. G. Plaintiffs were aware, in July 2001, that Propoco and BHC were negotiating the contract and that there was at least a possibility that the contract would be terminated. By letter dated September 19, 2001, two days before the alleged incident of sexual harassment, BHC's Vice President Rick Tenreiro notified Propoco that the services provided by Propoco under the agreement would be transferred to the hospital and that it was his intent "that the transfer [would] be completed by December 31, 2001." Defendant BHC's Ex. I. Tenreiro further indicated that, "effective the date of this letter, the Hospital will assume responsibility for the Director of Environmental Services and the Assistant Director," the positions held by Yohannes and Crowe, respectively, but that Propoco would "continue to be responsible for providing the ten (10) Onsite Company Employees who currently provide Services under the Housekeeping Agreement . . . ."[6] Id. While Propoco and BHC amended the contract on September 23, 2001 to indicate that the agreement would terminate as of December 31, 2001, and that Propoco would provide interim staffing, including the seventeen employees covered by the original contract, uncontroverted evidence indicates that Propoco was providing less than those seventeen employees as of the date of the amendment. Defendant Propoco's Supplemental Ex. A. The evidence thus does not support plaintiffs' argument that the September 23 amendment to the

_____

analytically distinct manner, whether it was addressing plaintiffs' prima facie case, seeking to satisfy its own burden of production, or addressing plaintiffs' case at the third step of the analysis. The court has nonetheless inferred defendant's arguments at each step.

[6]Propoco had originally contracted to provide seventeen employees to BHC. Propoco has submitted evidence indicating that, as of the week ending September 22, 2001, Propoco was actually providing only twelve employees, including Crowe and Yohannes. Defendant Propoco's Supplemental Ex. A.

contract superceded in any way Tenreiro's September 19 letter.[7]  Moreover, plaintiffs testified that they saw the people who ultimately replaced them at BHC before September 21, 2001.  This evidence satisfies BHC's burden of articulating a legitimate, non-retaliatory reason for terminating Crowe and Yohannes.

Accordingly, the court must determine whether the record contains evidence to support the plaintiffs' contention that BHC's proffered reason was merely pretext for retaliation.  The thrust of plaintiffs' claim is that BHC retaliated against them for having complained of Frumkin's alleged harassment by terminating their positions earlier than expected under the terms of Amendment No. 2 to the contract between Propoco and BHC.  Crowe claims that she expected to work at BHC through December 31, 2001, and Yohannes claims that he had been assured of working at least that long, and potentially through January or February of 2002 in order to prepare the new employees for a tri-annual inspection.

Plaintiffs attempt to identify direct evidence of retaliatory animus.  At three points during her deposition testimony, Crowe indicated that, on or about October 12, 2001, Propoco's Ken Vlass indicated that Frank Maddalena, speaking for BHC, wanted her off the premises because she had complained of sexual harassment.  Crowe Deposition 1 at 159-60, 164-65, 273.  The

---

[7]In fact, the record indicates that, as of the week ending September 22, 2001, taking into account credits issued to BHC for employees not actually provided by Propoco, Propoco was providing twelve employees under the contract.  Defendant Propoco's Supplementary Ex. A.  This evidence sheds light on Tenreiro's September 19, 2001 letter, which indicated that, after BHC took responsibility for Yohannes and Crowe's positions, Propoco would continue to provide ten employees.  See Defendant BHC's Ex. I.  Considered together, the evidence seriously undermines plaintiffs' argument that the September 19 letter was superceded by the September 23 amendment to the contract, which indicated that Propoco would continue to provide seventeen employees to BHC.  In fact, the evidence supports the inference that BHC decided to replace Crowe and Yohannes on September 19, before the alleged harassment occurred on September 21 and before Crowe officially complained on or about September 28, 2001.

statement is inadmissible hearsay with respect to BHC, however, and thus cannot be considered by the court on BHC's motion for summary judgment. Yohannes has identified similar hearsay statements, testifying that Myerson told him BHC did not want Crowe on the premises. Yohannes Deposition at 344-45. While Yohannes testified that BHC's Tenreiro "confirmed" the news, Yohannes testified only that Tenreiro said that Propoco had told him that if it had to "let Ms. Crowe go, they have to let [Yohannes] go." Id. at 345. This statement is also inadmissible hearsay. In any event, it hardly constitutes evidence of retaliatory animus on BHC's part.

The fundamental problem, however, is that plaintiffs' testimony that they expected, relying on statements of BHC employees, to retain their positions at BHC until at least December 31, 2001 does not raise a genuine issue of material fact in light of the other evidence before the court. That evidence indicates that BHC had determined to replace Crowe and Yohannes as of September 19, 2001 and that both plaintiffs' replacements were regularly present at the hospital before September 21. As explained above, plaintiffs' contention that the September 23, 2001 amendment to the contract indicated that Propoco would provide seventeen employees to BHC through December 31, 2001, thereby superceding the September 19 letter, does nothing to undermine that evidence. Plaintiffs' argument is particularly unpersuasive considering that, as of September 23, Propoco was providing fewer employees than the contractually specified number.

In short, plaintiffs have adduced no evidence from which a juror could reasonably conclude that BHC's proffered reason for terminating Yohannes and Crowe was a mere pretext for retaliation. Plaintiffs have presented no evidence to dispute that BHC had determined, before Crowe was harassed and before she had complained to BHC administrators, that it would fill

23

Yohannes and Crowe's positions internally well before December 31, 2003. As a result, the court must grant defendant BHC's motion for summary judgment on plaintiffs' retaliation claim.

III.     Hostile Work Environment Claim

Plaintiffs' remaining claim, that BHC is liable under the NYSHRL and NYCHRL for sexual harassment on a hostile work environment theory, and that Frumkin aided and abetted that violation of Crowe's rights, is based solely on state law.[8] The sole basis for subject matter jurisdiction over the state law claim being the existence of the federal law claim under Title VII, which has now been dismissed, the court declines to exercise jurisdiction over the pendent state law claim and dismisses it without prejudice. Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001).

---

[8]While plaintiffs' Complaint originally stated a cause of action for quid pro quo harassment under Title VII, plaintiffs have agreed to dismiss that claim against all defendants and they have not argued such a claim under state law.

## CONCLUSION

For the foregoing reasons, the court grants defendants' motion for summary judgment on plaintiffs's retaliation claim and declines to exercise pendent jurisdiction over plaintiff Crowe's state law claim. The court therefore dismisses the complaint in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

_____

Allyne R. Ross
United States District Judge

Dated: July 11, 2005
       Brooklyn, New York

SERVICE LIST:

<u>Attorneys for Plaintiffs</u>
Edward W. Miller
Law Offices Edward W. Miller
575 Lexington Avenue
Suite 2840
New York, NY 10022

Eileen H. Persky
Lawrence n. Rogak, LLC
3355 Lawson Boulevard
2nd Floor
Oceanside, NY 11572

<u>Attorneys for Defendants Brooklyn Hospital Center and Harvey Frumkin</u>
Dianna D. McCarthy
Winget, Spadafora & Schwartberg, LLP
45 Broadway
19th Floor
New Yok, NY 10006

Gregg David Minkin
London Fischer LLP
59 Maiden Lane
New York, NY 10038

Kathleen M. Kilduff
Winget, Spadafora & Schwartzberg, LLP
45 Broadway
New York, NY 10006

<u>Attorneys for Defendant Propoco, Inc.</u>
Greg A. Riolo
Jackson Lewis, LLP
One North Broadway, Suite 1502
White Plains, NY 10601

Jonathan M. Kozak
Jackson Lewis, LLP
One North Broadway, Suite 1502
White Plains, NY 10601

Steven D. Baderian
Jackson Lewis, LLP
One North Broadway, Suite 1502
White Plains, NY 10601