UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                              ::
DEBRA S. CROWE and MICHAEL YOHANNES,             :        02 CV 5938 (ARR)

                          Plaintiffs,            :
                                                 :        NOT FOR ELECTRONIC
      -against-                                  :        OR PRINT
                                                 :        PUBLICATION
BROOKLYN HOSPITAL CENTER, PROPOCO, INC.,         :
d/b/a PROFESSIONAL SERVICES, and HARVEY          :        OPINION AND ORDER
FRUMKIN,                                         :
                                                 :
                                                 X
                          Defendants.

-----------------------------------------------------------

ROSS, United States District Judge:

Plaintiffs Debra Crowe and Michael Yohannes brought suit against defendants

Brooklyn Hospital Center ("BHC"), Propoco, Inc. ("Propoco"), and Harvey Frumkin

("Frumkin"), alleging violations of Title VII of the Civil Rights Act of 1964, codified at 42

U.S.C. § 2000e-5 et seq., and the New York State Human Rights Law ("NYSHRL") and the

New York City Human Rights Law ("NYCHRL"). Defendants thereafter moved for summary

judgment. By order dated July 11, 2005, the court granted defendants' motion with respect to

the only remaining federal law claim, that defendants' had retaliated against plaintiffs in

violation of Title VII, and declined to exercise pendent jurisdiction over the remaining state

law claims. By papers dated July 29, 2005, plaintiffs have moved for reconsideration pursuant

to Fed. R. Civ. P. 59(e). Although the papers do not explicitly so state, the arguments

contained therein are made only on behalf of plaintiff Crowe with respect to defendant

Propoco. For the reasons stated below, plaintiff's motion for reconsideration is denied.

1

Plaintiff makes five arguments in support of her motion. Plaintiff first contends that the court overlooked the following record evidence: (1) that Propoco had a policy of maintaining employees "on the bench" at the time Crowe was terminated; (2) that Propoco promoted a less qualified employee before terminating Crowe and that Propoco's post-termination offer to reinstate Crowe was not in good faith, given that the company had already arranged for another employee to interview for that position; (3) that Propoco identified no plausible reason why it was financially necessary to terminate Crowe between assignments rather than to allow her to take accumulated vacation; and (4) that the court erred in its factual finding that Crowe was treated no differently than other Propoco employees assigned to BHC. Finally, plaintiff argues that the court improperly considered whether Crowe had suggested a motive why Propoco would retaliate against her. The court will address each argument in turn.

1.    Maintaining Employees "On the Bench"

Plaintiff first argues that, taking the record evidence in the light most favorable to her, Propoco had a policy of retaining managers "on the bench" between assignments. Plaintiff further contends that Propoco departed from this policy when it terminated her, creating a genuine issue of material fact as to whether Propoco's stated reason for its action was mere pretext for retaliation under the burden-shifting analysis. As a preliminary matter, the court notes that plaintiff misstates the court's previous order. While plaintiff contends that the "grant of summary judgment rested upon the factual finding that Propoco did not have a practice and policy of maintaining managers 'on the bench,' at the time they fired Debra Crowe," the court actually concluded that Crowe had not adduced evidence raising a genuine issue of material fact as to the existence of such a policy or practice. Order of July 11, 2005 at 16.

2

In plaintiff's motion for reconsideration, she relies on select portions of the deposition testimony of Propoco's Executive Vice President, Stephen Barnett, to argue that she has raised a genuine issue of material fact as to whether Propoco had a policy of retaining managers "on the bench" between assignments pending placement in a permanent position. When asked how frequently Propoco maintained employees in a "holding pattern" "on the bench" between assignments, Barnett indicated that "[i]t's fairly uncommon." Barnett Deposition at 22. When asked whether it "becomes necessary to carry an employee for some period of time, be it a few weeks or possibly more, to bridge the gap between two assignments," Barnett indicated that this happens "on occasion." Id. at 23. While Barnett indicated that the company would carry "any" management employees "on the bench" between assignments, and that the practice had existed throughout his tenure at Propoco, Barnett also testified that "we attempt to reassign our managers where possible," indicating that there was no categorical rule that the company regularly retained managers on the bench notwithstanding the circumstances. Id. at 23-25. Barnett further indicated that "[i]f we are not able to match responsibilities and experience of an individual with a new assignment, then we, on occasion, have to lay people off," clarifying that "we will attempt to keep that person employed, provided we feel that there is an opportunity pending, permanent opportunity pending for that person in the organization." Id. at 26-27. Concluding his testimony on this issue, Barnett indicated that he could not recall the company having retained an employee, with salary, for a few weeks pending assignment. Id. at 27-28.

In response to questioning about whether Propoco could have maintained Crowe as an active employee for two weeks following October 19, 2001, Propoco's Vice President of

Human Resources, Rich Myerson, indicated that "[t]he company made a decision in late summer, early fall 2001 that if managers became without a home, if their position was eliminated or, in this particular case, we lost an account and, you know, people were coming out of their positions, if we did not have a similar position at similar pay, then we were not in a financial position to continue that person—that persons's employment unless they had a slot to go into." Myerson Deposition at 50-51. Crowe's own testimony is not inconsistent with Myerson's. In response to a question whether any Propoco employee who had been terminated as a result of the expiration of the BHC contract was placed "on the bench," Crowe indicated that none were. Crowe Deposition 2 at 21-22.

Plaintiff argues that Propoco departed from its policy of maintaining employees "on the bench" when it terminated her due to a gap between assignments and that this departure from typical practice is sufficient indication of discriminatory treatment to show Propoco's stated reason for the termination to be pretextual. As previously stated, the court does not agree. Fairly read, Barnett's testimony indicates that Propoco endeavored to reassign its employees if it lost a contract. Myerson testified that as of late summer or early fall 2001, Propoco had determined to retain employees following a lost contract only if another position was immediately available. Plaintiff has not cited record evidence that Propoco had a categorical policy of maintaining employees "on the bench," and insofar as Myerson's testimony is not inconsistent with Barnett's, plaintiff has not adduced evidence to dispute Myerson's testimony. The burden of proof resides with the plaintiff at step three of the burden-shifting analysis, and drawing all reasonable inferences in the plaintiff's favor does not permit the court to disregard evidence that is not favorable to plaintiff and which has not been disputed. The court thus

4

concludes that plaintiff has not adduced evidence raising a genuine issue of material fact as to whether Propoco had a policy of maintaining employees "on the bench" between assignments from which the company departed in her case. As a result, the court cannot conclude that plaintiff has adduced evidence sufficient to raise an issue of fact as to whether her termination constituted a departure from a long-standing company policy or that Propoco's stated reason for the termination was merely a pretext for retaliation.

2.      Promoting a Less Qualified Employee

Plaintiff argues that while she was terminated by Propoco on October 19, 2001, a less qualified employee, Ruben Gonzalez, was placed at Brenner nursing home. Plaintiff first appears to argue that the court "minimized" the record evidence by stating that Gonzalez was "an arguably less qualified employee," given that Propoco's Myerson testified that Crowe was Propoco's preferred candidate for two positions in October of 2001, Myerson Deposition at 74, and that Propoco's Vlass rated Gonzalez three on a scale of one to five, with five being the highest, while rating Crowe four. Vlass Deposition at 60-62. The court in no way intended to minimize or otherwise weigh the evidence suggesting that Crowe was a more qualified employee than Gonzalez. Rather, assuming that she was more qualified, the court concluded that plaintiff had not raised an issue of fact as to whether Propoco's reason for terminating her was a mere pretext for retaliation because the record indicated that Crowe was no longer interested in working for Propoco once her employment had been terminated. Plaintiff's second contention is that the court misstated the evidence, writing in its July 11, 2005 opinion that Gonzalez was placed at Brenner after Crowe was terminated rather than before she was terminated. While plaintiff's interpretation of the timing may be correct, she has identified an

issue that was not material to the court's ruling. Plaintiff has cited no record evidence meriting reconsideration of the court's previous decision.

Propoco's CEO, Ira Levy, testified that two opportunities were offered to Crowe shortly after her termination. Levy Deposition at 69. Propoco's Myerson also testified that two opportunities were available at plaintiff's salary level, one at Green Park Nursing Care Center ("Green Park") and one at Brenner. Myerson Deposition at 72-73. Myerson testified that Propoco had determined that Crowe and Gonzalez would be candidates for both positions, but that Crowe was the preferred candidate. Id. at 73. Myerson testified that Propoco told Crowe that she should indicate which position interested her most and Propoco would arrange interviews for her. Id. at 74. He further indicated that when Crowe decided not to pursue any opportunities with Propoco, they spoke to Gonzalez about those positions. Id. Myerson also testified, although Gonzalez was assigned to Brenner as of Saturday, October 27, 2001, a position that Myerson contends would have actually begun on Monday, October 29, that Propoco would have suggested that Brenner consider hiring Crowe had she indicated any interest in the position by October 29, 2001. Id. at 81-82.

Crowe testified that Propoco's Ken Vlass told her at an October 12, 2001 meeting that she was to be terminated, Crowe Deposition 2 at 200, and that he would call her the following Monday, on October 15, about an interview at Brenner. Crowe Deposition 1 at 179-80. She indicated that Vlass wanted her to interview for the position at Brenner. Id. at 158. Crowe testified that while Vlass did not contact her, Myerson called her the following week and left a message about an interview. Id. at 180-81. Her testimony is supported by Myerson's handwritten note that he left messages for Crowe on October 24 and October 26. Plaintiff's

6

Ex. 4. Crowe further testified that she did not return Myerson's call because she was no longer interested in working for Propoco. Id. at 181, 189.

The record indicates that Gonzalez was placed at Brenner on October 27, 2001. Plaintiff's Ex. 3. Myerson testified that he likely did not begin working there until the following Monday, October 29, 2001. Myerson Deposition at 81. The record provides no clear indication when Gonzalez was offered the Brenner position. The record indicates that Gonzalez interviewed at Brenner one or two weeks after Propoco informed him of the opening. Gonzalez Deposition at 17-18. The record further indicates that he was informed that he had gotten the position approximately one week after the interview. Id. at 20-21. While the dates are impossible to glean from the record, it is likely, as plaintiff contests, that Propoco first discussed the position with Gonzalez before plaintiff was officially terminated on October 19, 2001.

On the foregoing record, plaintiff has adduced no evidence that Propoco selected a less qualified employee for a position while firing plaintiff. To the contrary, the record indicates that Propoco made overtures regarding the Brenner position to both Crowe and Gonzalez. While the record is ambiguous as to when Gonzalez was actually offered the position at Brenner, plaintiff has acknowledged that Propoco contacted her about an interview during the week of October 22, before Gonzalez was actually assigned to Brenner. Moreover, while plaintiff may find it incredible that Propoco would have presented Crowe for an interview at Brenner if she showed interest before October 29, 2001, the day Myerson testified Gonzalez was to begin working there, plaintiff has not controverted that testimony with any evidence whatsoever. As a result, the court sees no reason to reconsider its previous ruling.

7

In a related argument, plaintiff contends that "whether the employer made a good faith bona fide offer of reinstatement is a question of fact for trial, and the Defendant bears the burden of persuasion on these issues," Plaintiff's Brief at 11, citing, inter alia, Clark v. Frank, 960 F.2d 1146, 1151 (2d Cir. 1992). In Clark, the Second Circuit discussed circumstances in which the Equal Employment Opportunity Commission had determined that the employer violated Title VII, and the court considered whether the plaintiff had rejected an offer of reinstatement and, as a result, whether the employer's liability for back pay should be tolled as of that date. Id. The other cases cited by plaintiff discuss an employer's burden of proving, in order to reduce a meritorious claimant's entitlement to backpay, that a plaintiff has failed to mitigate damages after having been discharged in violation of Title VII. See, e.g., Robles v. Cox & Co., Inc., 154 F.Supp.2d 795, 807 (S.D.N.Y. 2001). The instant case does not involve a question of mitigating damages or whether a meritorious claimant is entitled to limited backpay. Rather, the court's prior opinion indicated that plaintiff had not raised a genuine issue of material fact as to whether Propoco's proffered reason for its action was a mere pretext for retaliation. As a result, the cases cited by plaintiff are inapposite.

3.    Financial Necessity

Plaintiff argues that the court concluded "without reason" that her claim that Propoco could have allowed Crowe to take vacation time or given her unpaid leave between assignments, rather than terminating her employment, do not constitute evidence of pretext. Plaintiff contends that Propoco's proffered reason for firing Crowe was "financial necessity." Plaintiff further contends that this reason is unworthy of credence given the likelihood that Crowe would have gotten the position at Brenner starting within two weeks of her termination

and that the savings to the company would have been minimal. Notwithstanding plaintiff's

position that "any civilian" "rolls their eyes" at the suggestion that an employer would

terminate a valued employee to save a single week's pay, the court is simply not in a position

to second-guess Propoco's business judgment without evidence of retaliatory motive. As the

court previously stated, had plaintiff adduced evidence that Propoco maintained a categorical

policy of retaining managers "on the bench" between assignments, she may have adduced

evidence of such a motive. Without evidence of a retaliatory motive, however, the court may

not substitute its business judgment for that of the employers. See Hamilton v. Bally of

Switzerland, No. 03 Civ. 5685 (GEL), 2005 WL 1162450, *11 (S.D.N.Y. Apr. 17. 2005).

Stated differently, without evidence that Propoco had an "on the bench" policy during the

relevant period from which it departed in Crowe's case, or some other evidence of retaliatory

motive, plaintiff is not entitled to an inference that Propoco's decision to terminate her pending

potential placement in another assignment is itself evidence of retaliatory motive.[1]

4.      Differential Treatment

Plaintiff argues that, prior to terminating Crowe, "Propoco had never terminated any

good Assistant Director or Director due to lack of work." Plaintiff's Brief in Support of

---

[1]The court notes that plaintiff's argument apparently is subsumed by her contention that Propoco's offer to arrange an interview at Brenner was not made in good faith. Were plaintiff to argue that the offer was made in good faith, plaintiff's claim could only be that Propoco retaliated against her in violation of Title VII by discharging her for a period of approximately two weeks pending a new assignment, a claim plaintiff has not made. Alternatively, if plaintiff's argument is that the offer to arrange an interview at Brenner was not made in good faith, her "financial necessity" claim is part of that argument and could not constitute an independent indication of retaliatory motive. Thus, in light of the court's conclusion that plaintiff has adduced no evidence controverting the record evidence that Propoco sought to place her at Brenner, plaintiff's argument that Propoco had no credible financial reason for terminating her provides the court with no reason to reconsider its previous ruling.

Motion for Reconsideration at 9. Plaintiff further argues that this "in and of itself is a smoke signal indicating the presence of the fire of illegal discrimination." Id. As a preliminary matter, the court notes that plaintiff's argument appears merely to restate her claim that Propoco violated its policy of maintaining employees "on the bench" between assignments. If Propoco had in fact never terminated such a director even following the loss of a contract, it must be that Propoco either had another position immediately available or that Propoco maintained the director "on the bench" pending a new assignment. Plaintiff has adduced no evidence that a position was immediately available at the time her employment was terminated, and the court has previously addressed the latter claim. Moreover, as noted in the court's previous opinion, plaintiff has adduced no evidence suggesting that Propoco retained any other employee who lost his or her position at BHC pending assignment in another institution, and plaintiff bears the burden of establishing differential treatment. That other employees did not continue their employment with Propoco following the loss of the contract with BHC for reasons other than lack of work, such as poor performance, does not constitute evidence that Propoco's proffered reason for terminating Crowe, that no alternative position was immediately available, was mere pretext for retaliation and does not satisfy plaintiff's burden of adducing evidence of retaliatory motive.[2] In any event, the court reiterates that plaintiff has adduced no evidence controverting the record evidence that Propoco sought to place plaintiff in a new assignment following her termination.

5.    Other Considerations

---

[2]The court notes that plaintiff has not adduced evidence that Propoco had positions available for these employees had they not been terminated for reasons other than lack of work.

Finally, citing <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 (2000),

plaintiff argues that the court improperly considered whether plaintiff had suggested a motive

on Propoco's part to terminate her in retaliation for complaining that a BHC employee had

sexually harassed her.  As a preliminary matter, it should be clear that the portion of the court's

July 11, 2005 order cited by plaintiff, which appears in a footnote to a concluding paragraph,

was not material to the court's ruling.  The court further notes that in <u>Reeves</u>, the plaintiff had

established a <u>prima facie</u> case and adduced sufficient evidence to disbelieve the employer's

legitimate, non-discriminatory reason for its action.  In the instant case, while plaintiff

established a <u>prima facie</u> case, the court concluded that she did not adduce evidence from

which a reasonable juror could infer that Propoco's proffered reasons for terminating her were

merely pretextual.  <u>Reeves</u> is thus inapposite.

## CONCLUSION

For the foregoing reasons, the court denies plaintiff Crowe's motion to reconsider.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: August 4, 2005
      Brooklyn, New York

11

SERVICE LIST:

Attorneys for Plaintiffs
Edward W. Miller
Law Offices Edward W. Miller
575 Lexington Avenue
Suite 2840
New York, NY 10022

Eileen H. Persky
Lawrence n. Rogak, LLC
3355 Lawson Boulevard
2nd Floor
Oceanside, NY 11572

Attorneys for Defendants Brooklyn Hospital Center and Harvey Frumkin
Dianna D. McCarthy
Winget, Spadafora & Schwartberg, LLP
45 Broadway
19th Floor
New Yok, NY 10006

Gregg David Minkin
London Fischer LLP
59 Maiden Lane
New York, NY 10038

Kathleen M. Kilduff
Winget, Spadafora & Schwartzberg, LLP
45 Broadway
New York, NY 10006

Attorneys for Defendant Propoco, Inc.
Greg A. Riolo
Jackson Lewis, LLP
One North Broadway, Suite 1502
White Plains, NY 10601

Jonathan M. Kozak
Jackson Lewis, LLP
One North Broadway, Suite 1502
White Plains, NY 10601

Steven D. Baderian
Jackson Lewis, LLP
One North Broadway, Suite 1502
White Plains, NY 10601